# UNITED STATES DISTRICT COURT
for the

MIDDLE District of FLORIDA

United States of America

v.

JUAN RODRIGUEZ ACOSTA,
SIMON BOLIVAR FERRERAS TRINIDAD,
EUCLIDES TOUS CALLE,
EFRAIN BILBAO VARELA,
JESUS HERNANDEO ANGULO MOSQUERA,
ARLEY LOPEZ ENCISO,
EMERSON JULIO CARCEDO, and
MANUEL De JESUS CESPO MARIN

Case No. 8:14 MJ1663 MAP

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 28, 2014 in the county of MDFL in the Middle District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 46, United States Code, Sections 70503(a), and 70506(a) and (b). | Conspiracy to possess with intent to distribute five kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States. Possession with intent to distribute of five kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States. |

This criminal complaint is based on these facts:


☒ Continued on the attached sheet.

*Complainant's signature*

Special Agent Ivan Garcia, HSI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 4, 2014

*Judge's signature*

City and state:

MARK A. PIZZO, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

Your affiant, Ivan Garcia, being duly sworn, deposes and states the following:

1. I am a citizen of the United States, residing in Florida.

2. I have been employed as a Special Agent (SA) with Homeland Security Investigations (HSI), since February of 2003. Prior to this, your affiant was employed for eight years as a Detective and Deputy Sheriff with the Polk County Sheriff's Office. I have participated in and received training with respect to the investigations of organizations and individuals involved in illegal drug trafficking activities, including those involved in the maritime smuggling of shipments of cocaine in the Caribbean Sea and elsewhere.

3. Based on my training and experience as a Special Agent with HSI, I have conducted investigations concerning violations of Title 21, United States Code, Sections 959 and 960, which prohibit the production, transportation, importation, distribution and possession of illegal drugs, including cocaine, and violations of Title 46 Appendix, United States Code, Section 70503 (the Maritime Drug Law Enforcement Act), which prohibits drug trafficking on the high seas, including the possession with intent to distribute cocaine on vessels subject to the jurisdiction of the United States. Through these investigations, I have become familiar with the means and methods narcotics traffickers use to transport, import and distribute illicit drugs, as well as, the support and assistance that narcotics organizations require to conduct their illegal activities.

4. Since December of 2010, I have been assigned as a Special Agent to Operation Panama Express (North) Strike Force. Operation Panama Express is a federally approved Organized Crime Drug Enforcement Strike Force (OCDETF) investigation being conducted by Homeland Security Investigations, the Drug

Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), the United States Coast Guard, the Internal Revenue Service (IRS) and state and local law enforcement agencies. Special Agents assigned to Operation Panama Express currently investigate cocaine smuggling organizations that are responsible for the transportation of cocaine through international waters of the Caribbean Sea (via vessel) to transshipment locations for later introduction and distribution to the United States.

5. This affidavit is submitted in support of a criminal complaint and the issuance of arrest warrants for the following individuals:

    (A) Juan Rodriguez Acosta (Guatemalan national)

    (B) Simon Bolivar Ferreras Trinidad (Dominican national)

    (C) Euclides Tous Calle (Colombian national)

    (D) Efrain Bilbao Varela (Colombian national)

    (E) Jesus Hernandeo Angulo Mosquera (Colombian national)

    (F) Arley Lopez Enciso (Colombian national)

    (G) Emerson Julio Carcedo (Colombian national)

    (H) Manuel De Jesus Cespo Marin (Colombian national)

who knowingly and willfully conspired to possess with the intent to distribute five (5) kilogram or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States.

6. In the course of my duties, I sometimes receive reports from U.S. Coast Guard (USCG) law enforcement personnel related to at-sea interdictions of vessels suspected of transporting narcotics or committing other violations of federal law. I gained the following information from reviewing reports of law enforcement personnel

2

from United States Coast Guard Cutter (USCGC) Legare.

7. The USCG has the authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce federal laws.

8. On August 28, 2014, while on patrol in the Western Caribbean Sea, a maritime patrol aircraft (MPA) detected visually and by radar the Motor Vessel (MV) Hope II in international waters at position 10-09N 079-12W approximately 33 nautical miles North of Punta Cuango, Panama. The USCGC Legare arrived in the area and located the MV Hope II. The MV Hope II was described as a 165 foot Panamanian flagged coastal freighter registration number 45323 with a raised deck and blue hull. In my training and experience, this area is known as a maritime smuggling corridor for the transportation of controlled substances, primarily cocaine.

9. On August 28, 2014, the USCGC Legare obtained approval from the Commander of the Seventh Coast Guard District, Miami, Florida to conduct a right of approach (ROA) contact in international waters of the MV Hope II.

10. During the ROA contact, the USCG Boarding Team (BT) obtained a claim of Panamanian registry of the vessel and the crew claimed that 6 were Colombians nationals, 1 Guatemalan national, and 1 Dominican national. Juan Rodriguez Acosta claimed to be the Master of the vessel. The last port of call for MV Hope II was Cartagena, Colombia, and the next port of call was to be Porte Moin, Costa Rica. The USCG Legare informed the Seventh Coast Guard District of the crew members' claim. In accordance with the bilateral agreement between the United States and Panama, the Seventh Coast Guard District informed the Panamanian Government of the master's

claim of the vessels registry. The Government of Panama confirmed that the MV Hope II was a Panamanian-flagged and registered vessel and verbally waived jurisdiction allowing the USCG to enforce U.S. law over the vessel.

11. The USGC identified the crew of the MV Hope II as Juan Rodriguez Acosta (GT), Simon Bolivar Ferreras Trinidad (DR), Euclides Tous Calle (CO), Efrain Bilbao Varela (CO), Jesus Hernandeo Angulo Mosquera (CO), Arley Lopez Enciso (CO), Emerson Julio Carcedo (CO), and Manuel De Jesus Cespo Marin (CO).

12. Following the waiver of jurisdiction by the Panamanian Government, the USCG BT was granted permission to conduct a counter drug boarding of the vessel. The boarding began with the Initial Safety Inspection (ISS). Upon completion of the ISS, the BT proceeded to conduct an At Sea Space Accountability (ASSA) of the MV Hope II.

13. On August 29, 2014, the BT accessed the aft fuel tank of the vessel and observed contraband visible. During the search of the aft fuel tank, the BT located and recovered a total of approximately 1,493 kilograms of cocaine. The BT also located several packages which tested positive for cocaine beneath a deck plate forward of the aft steering. The estimated combined total weight of the contraband located is approximately 1,700 kilograms. Additionally, IONSCAN swipes were conducted in the vessel's common area, and there was a positive hit for cocaine located in the galley of the vessel. In my training and experience, the total wholesale value of the cocaine is approximately $42 million.

14. In summary, the aforementioned MV Hope II fits the profile of a coastal smuggling vessel capable of operating under the auspices of transporting cargo in an effort to avoid law enforcement detection, and therefore, is considered a favorable

4

vehicle for narcotics smuggling operations. Furthermore, in my training and experience, drug smugglers would not allow an unknowing outsider on board a vessel filled with approximately $42 million worth of contraband. In this case, the size of the contraband shipment, the necessarily close relationship between captain and crew on a vessel of this size and type, and the positive IONSCAN for cocaine in the gallery area of the vessel, there is probable cause to believe that the eight defendants knowingly and willfully conspired with each other and other persons to possess with intent to distribute five (5) kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503 and 70506.

Affiant declares under penalty of perjury that the foregoing is true and correct.

_____
Ivan Garcia, Special Agent
Homeland Security investigations

Sworn to and subscribed before me
this ____ day of September, 2014.

_____
MARK A. PIZZO
United States Magistrate Judge